UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERYC YOUNG,

        Plaintiff,

v.

        Case Number 04-10309-BC
        Honorable David M. Lawson

HIGHTOWER, first name unknown, and
JOHN DOE, unknown corrections officer,

        Defendants.

_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING DEFENDANT'S MOTIONS TO DISMISS, AND GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT AND FOR LEAVE TO FILE APPEARANCE**

The plaintiff in this case is a Michigan prisoner who has filed a *pro se* complaint for damages alleging that his civil rights have been violated by prison officials. The matter was referred to Magistrate Judge Charles E. Binder for general case management, and thereafter the defendants filed a motion to dismiss on the ground that the plaintiff did not exhaust his available state administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The magistrate judge filed a report recommending that the motion be denied. The defendants filed timely objections and the matter is now before the Court for a *de novo* review. In the mean time, the plaintiff has filed a motion seeking leave to file an amended complaint, and an attorney has expressed an interest in filing an appearance on the plaintiff's behalf if the amendment is allowed. The proposed amendment would add a state law tort claim. The Court agrees with the magistrate judge that the plaintiff has complied with the exhaustion requirements of the PLRA. Therefore, the Court will deny the defendant's motion to dismiss, grant the motion to amend the complaint, and permit the filing of an appearance.

I.

The magistrate judge summarized the facts in his report; the Court restates them here for convenience. The plaintiff, Eryc Young, a prisoner currently housed at the Michigan Department of Correction's (MDOC) Chippewa Correctional Facility in Kincheloe, Michigan, filed a complaint alleging that defendant Hightower and another unknown corrections officer were deliberately indifferent to his safety in violation of the Eighth Amendment. The complaint was transferred from the Western District of Michigan to this court on November 11, 2004.

In his complaint, the plaintiff makes the following claims: The plaintiff was to be transported in a prison van from the Macomb Correctional Facility to the Foote Hospital on December 11, 2002 for a medical examination. Compl. ¶ 1. Because he was placed in belly chains and leg irons, he could not buckle his seat belt himself, so he asked defendant Hightower and the unknown officer to buckle his seat belt. Compl. ¶ 2. According to the plaintiff, one of them responded, "I'm not reaching across you, don't worry we won't get in no accident." *Ibid*. Defendant Hightower was speeding and weaving in and out of traffic, exceeding the speed limit by 15 miles per hour as they passed another vehicle. Compl. ¶ 3. The prison vehicle hit the back of another car. *Ibid*. The impact caused the plaintiff to be thrown against the "cage" that separates the back seat from the front. Compl. ¶ 4. As a result, the plaintiff suffered back and neck spasms. *Ibid*. The next day, the plaintiff sought medical care at the prison for the back and neck spasms caused by the accident. Compl. ¶ 7. The plaintiff claims that he filed a grievance on May 13, 2004 and appealed it through all levels, receiving the denial of his Step III grievance appeal on July 19, 2004. Compl. ¶¶ 8-14.

The plaintiff attached to his complaint copies of his health care request form dated December 12, 2002; the original grievance, its response, and a receipt for the Step I grievance; his Step II appeal and a receipt for the Step II appeal; receipts for postage to mail the grievances; and a copy of a letter dated July 19, 2004, from James G. Armstrong, manager of the prisoner affairs section of the Michigan Department of Corrections (MDOC), explaining that the plaintiff's Step III grievance could not be "processed further" until the plaintiff sent the original statement of grievance and the Step I response. The letter listed five documents that the plaintiff was instructed to send to the MDOC, including:

1) The **white copy** of the Prisoner/Parolee Grievance Form (CSJ-247A),
2) The step I response with all related attachments or goldenrod copy with legible grievance statement when the step I response was not received,
3) The Prisoner/Parolee Grievance Appeal Form (CSJ-247B),
4) The step II response (or goldenrod copy with legible reason for appeal to Step II when the step II response was not received, and
5) Your reason for appeal to Step III.

Compl. Ex.____ (letter from James G. Armstrong to Young) (typographic irregularities in original). At the bottom of the letter was a note stating that the plaintiff should "[r]eturn this letter with your grievance as a record of your timely filing of this grievance." *Ibid*.

The defendant filed a motion to dismiss claiming that the plaintiff did not return the requested documents and therefore did not exhaust his administrative remedies within the prison system. The plaintiff responded to the motion asserting that in fact he did submit the requested documentation, although he did not allege as much in his complaint. On May 25, 2005, Magistrate Judge Binder filed his report recommending that the motion be denied. He reasoned that the plaintiff had complied with the policy by submitting a completed Step III grievance form, "even if [he] failed to comply with the directives in this letter." R&R at 6. The magistrate judge concluded

that the MDOC policy was satisfied by submission of the grievance form. The magistrate judge determined that the prison officials received the Step III grievance, which was evident from the letter asking for additional attachments. "The fact that more paperwork was requested in this instance, I suggest, does not create an additional requirement under the PLRA." *Ibid.*

The defendants filed timely objections to the recommendation and report. The defendants contend that the MDOC policy requires that a prisoner submit a "completed" Step III grievance, and without the requested attachments, the plaintiff's grievance was not "completed." They also insist that the Court must ignore the plaintiff's assertion in his answer to the motion to dismiss that he in fact submitted the requested paperwork because the plaintiff was obliged to state that instead in his complaint.

While the objections were pending, an attorney contacted the Court on the plaintiff's behalf and expressed interest in appearing in the case, but only if the Court would allow an amendment to the pleadings so that a related state law claim could be added.

II.

The requirements for exhaustion in prisoner civil rights cases are well known. Before filing a civil rights suit challenging prison conditions, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). A prisoner must pursue the administrative process even if it does not offer the precise relief that the prisoner seeks, *Booth v. Churner*, 532 U.S. 731, 741 (2001), or the time for filing the grievance has expired. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). A prisoner cannot abandon the grievance process before completion and then claim to have exhausted administrative remedies. *Ibid.* If a prisoner has failed to demonstrate exhaustion of administrative remedies, the complaint must be dismissed. *See Brown v. Toombs*, 139 F.3d 1102,

1104 (6th Cir. 1998). To demonstrate exhaustion of administrative remedies, an inmate must attach to the complaint copies of the grievances and their dispositions or describe the outcome of the administrative proceedings with some specificity. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000).

The MDOC has a three-step grievance process available to prisoners. If a grievance is denied at Step I or II, the administrative policy requires the inmate to proceed one step further, as follows:

<u>Step III</u>

> HH.   If a grievant is dissatisfied with the response received at Step II or does not receive a timely response, s/he may send a completed Step III grievance to the Prisoner Affairs Section. The form must be sent within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions. A grievant also may file a grievance directly to Step III in accordance with Paragraph S.

MDOC Policy Directive 03.02.130, effective Dec. 19, 2003. There is no language in the policy directive as to the documents that must be attached to the form itself. However, Section H of MDOC Policy Directive 03.02.130 states:

> [G]rievances shall not be rejected or denied solely because the prisoner has not included with his/her grievance exhibits or other documents related to the grievance. If the grievance references documents and those documents are not in the prisoner's files or otherwise available to the grievance coordinator or respondent except through the prisoner, the documents shall be reviewed with the prisoner as part of the grievance investigation process. If the grievance coordinator or respondent determines that a copy of a document is needed for the grievance investigation, the copy shall be made at Department expense.

This provision, and the absence of requirements in the policy that specific documents must be filed with the Step III grievance form, suggest that such materials are not necessary to constitute a "completed" Step III appeal for exhaustion purposes.

The position that the defendants take in this case exalts form over substance, which the Sixth Circuit has condemned in the context of the PLRA's exhaustion requirement. *See Thomas v. Woolum*, 337 F.3d 720 (6th Cir. 2003). In *Thomas*, the court rejected the notion that a prisoner who fails to meet the state-imposed time limits on submitting a grievance, but submits one nonetheless through all the required steps and adequately describes his complaint, falls short of the PLRA's requirements. Rather, the court examined the rationale underlying the exhaustion rules and concluded that the purpose of the exhaustion requirement is merely to give prison officials notice of the prisoner complaint so they can deal with it internally if they wish, and that a grievance providing notice of the nature and object of the complaint meets the exhaustion requirement. The court summarized its holding as follows:

> [T]his case turns not on *whether* exhaustion is required, the answer to which is well settled, but on *what* exhaustion requires. We answer that question in light of Congress's purpose in passing the PLRA and Supreme Court precedent regarding the exhaustion doctrine's oft-stated purpose: to give prison officials the first opportunity to address inmate complaints according to their rules and procedures without letting those timetables dictate the outcomes of § 1983 actions. Accordingly, we hold that so long as an inmate presents his or her grievance to prison officials and appeals through the available procedures, the inmate has exhausted his or her administrative remedies, and a prison's decision not to address the grievance because it was untimely under prison rules shall not bar the federal suit. We also hold, however, that when a grievance does not give prison officials notice of the nature of the inmate's complaint, the inmate has not met the PLRA's requirements.

*Id.* at 722-23. Although the specific issue in that case concerned timeliness of the submitted grievance, the Court believes that the decision is broad enough to apply to other procedural regulations that do not implicate the basic purpose of the PLRA as identified by that court. Therefore, once a prisoner takes the grievance procedure to its last step, "if the state forgoes an opportunity to decide matters internally whether for internal time constraints *or any other reason*,

the PLRA has nonetheless served its purpose, and the prisoner may proceed to federal court." *Id.* at 726 (emphasis added).

In this case, the language of the letter sent by a prison official requesting copies of documents that the plaintiff had sent previously to other prison officials in the Step I and Step II phase of the grievance process suggests that the request for additional materials was procedural: the letter simply states that certain documents were not submitted and lists documents that the plaintiff must submit. The letter did not explain that substantive information was missing or that officials did not understand the nature of the plaintiff's complaint. The Court concludes therefore that the plaintiff's Step III grievance provided adequate notice of his complaint, which is all that is necessary for exhaustion. Because the prison officials, for whatever reason, chose not to proceed further with the plaintiff's complaint, the plaintiff could not take his complaint any further through the administrate process. Although the fact that the plaintiff reached the end of the line can be inferred from the complaint and its attachments, this conclusion is bolstered by the plaintiff's asserting in the motion papers that he in fact submitted the requested documents and still did not obtain redress. The plaintiff has turned to the federal courts. Although the defendants argue that the plaintiff ought not be here, "nothing suggests that a goal of the [PLRA], and specifically, of the exhaustion requirement, was to defeat valid constitutional claims." *Thomas*, 337 F.3d at 726.

The Court agrees with the magistrate judge that the plaintiff has satisfied the requirements of 42 U.S.C. § 1997e(a) and will adopt the report and recommendation.

### III.

Although the case is nearly a year old, it is still in its initial posture because of the procedural issue now decided. The plaintiff now seeks permission to have an attorney file an appearance and

leave to amend the complaint. Federal Rule of Civil Procedure 15(a) governs the ability of a party to amend a complaint. That Rule states, in part: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Under Rule 15(a), this Court has wide discretion to allow a party to amend a complaint. *See Benzon v. Morgan Stanley Distribs.*, 420 F.3d 598, 613 (6th Cir. 2005). Denial generally is appropriate only where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

There is no evidence here of delay or bad motive in the plaintiff's request to amend the complaint. Moreover, the presence of counsel may serve to advance the orderly progress of the litigation toward a conclusion. The Court will grant the plaintiff's requests.

IV.

The Court finds that the plaintiff has satisfied the exhaustion requirements of the PLRA. The Court further finds that the plaintiff's request to amend the complaint is reasonable.

Accordingly, it is **ORDERED** that the defendants' objections to the magistrate judge's report and recommendation are **OVERRULED**.

It is further **ORDERED** that the defendants' motion to dismiss [dkt # 7] is **DENIED**.

It is further **ORDERED** that the plaintiff's motion to amend the complaint and allow an attorney to file an appearance [dkt # 16] is **GRANTED**.

It is further **ORDERED** that the plaintiff's prospective attorney may file an appearance and an amended complaint on or before **November 8, 2005**. Further proceedings shall take place before the magistrate judge under the previous reference order.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: October 18, 2005

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 18, 2005.

s/Tracy A. Jacobs  
TRACY A. JACOBS